**IN THE UNITED STATES BANKRUPTCY COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | |
|---|---|
| In re: | § Chapter 7 |
| | § |
| XECHEM, INC., et al., | § Case No.: 08-30512 (JBS) |
| | § (Jointly Administered) |
| Debtors. | § |
| | § **Hearing Date: November 18, 2011** |
| | § **Hearing Time: 10:30 a.m.** |

## NOTICE OF APPLICATION

**PLEASE TAKE NOTICE** that on **Friday, November 18, 2011 at 10:30 a.m.** or as soon thereafter as counsel may be heard, we shall appear before the **Honorable Jack B. Schmetterer,** Bankruptcy Judge, in Courtroom 682 in the U.S. Courthouse, 219 South Dearborn Street, Chicago, Illinois, or in his absence, before such other Judge who may be sitting in his place and stead and hearing motions, and shall then and there present the **Final Application of SNR DENTON US LLP, for Allowance of Compensation and Reimbursement of Expenses for Services Rendered,** a copy of which is attached and herewith served upon you, and shall pray for the entry of an order in conformity with the prayer of said pleadings

Dated: Chicago, Illinois
       October 28, 2011

Respectfully submitted,

SNR DENTON US LLP


By:  /s/ Robert E. Richards
Robert E. Richards (ARDC No. 6199138)
233 South Wacker Drive
Suite 7800
Chicago, IL 60606
robert.richards@snrdenton.com
Telephone: (312) 876-8000
Facsimile: (312) 876-7934

*Former Counsel to the Chapter 11 Official
Committee of Unsecured Creditors*

**IN THE UNITED STATES BANKRUPTCY COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | | |
|---|---|---|
| In re: | § | Chapter 7 |
| | § | |
| XECHEM, INC., et al., | § | Case No.: 08-30512 (JBS) |
| | § | (Jointly Administered) |
| Debtors. | § | |
| | § | **Hearing Date: November 18, 2011** |
| | § | **Hearing Time: 10:30 a.m.** |

**SUMMARY OF
FIRST AND FINAL APPLICATION OF SNR DENTON US LLP
(FORMERLY KNOWN AS SONNENSCHEIN NATH & ROSENTHAL LLP)
FOR ALLOWANCE OF CHAPTER 11 ADMINISTRATIVE CLAIM FOR
<u>COMPENSATION AND REIMBURSEMENT OF EXPENSES</u>**

Name of Applicant: <u>SNR Denton US LLP</u>

Authorized to Provide

Professional Services to: <u>The Official Committee of Unsecured Creditors</u>

Date of Retention: Effective as of 12/18/08
(Xechem, Inc. Case. Dkt. No. 81, 1/13/09;
Xechem Int'l Case Dkt. No. 62, 2/3/09)

Period for Which Compensation
And Reimbursement are Sought: December 18, 2008 through March 7, 2011

Amount of Fees: <u>$362,925.00</u>

Amount of Expense Reimbursement
Sought: <u>$8,270.10</u>

This is a(n):      <u>   </u> Interim Application   <u> X </u> Final Application

**IN THE UNITED STATES BANKRUPTCY COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | | |
|---|---|---|
| In re: | § | Chapter 7 |
| | § | |
| XECHEM, INC., et al., | § | Case No.: 08-30512 (JBS) |
| | § | (Jointly Administered) |
| Debtors. | § | |
| | § | **Hearing Date: November 18, 2011** |
| | § | **Hearing Time: 10:30 a.m.** |

**FIRST AND FINAL APPLICATION OF SNR DENTON US LLP
FOR ALLOWANCE OF CHAPTER 11 ADMINISTRATIVE CLAIM FOR
COMPENSATION AND REIMBURSEMENT OF EXPENSES**

SNR Denton US LLP, formerly known as Sonnenschein Nath & Rosenthal LLP ("*SNR Denton*"), former counsel for the former Chapter 11 Official Committee of Unsecured Creditors in the above-captioned cases (the "*Committee*"), hereby applies for allowance and payment in full (the "*Application*") of a Chapter 11 administrative claim for (i) compensation in the amount of $362,925.00 for the reasonable and necessary legal services that SNR Denton has rendered to the Committee (the "*Fees*") and (ii) reimbursement of the actual and necessary expenses that SNR Denton has incurred (the "*Expenses*") in the amount of $8,270.10 for the period from December 18, 2008 (the effective date of SNR Denton's retention) through March 7, 2011 (the date the cases converted to Chapter 7).  In support of this Application, SNR Denton respectfully states as follows:

**BACKGROUND**

1. Voluntary chapter 11 petitions were filed for these Debtors on November 9, 2008.

2. The Committee was formed on December 12, 2008.

3. Debtor Xechem International, Inc. rights to the license for the synthetic sickle cell anemia treatment drug 5-HMF were sold shortly thereafter.

- 2 -

4.     The stock of the Xechem Nigeria was listed as having a value of $7 million in Xechem International's schedules and was the subject of a marketing effort by a reportedly leading Nigeria investment bank who expected to receive bids of around $6 million for that stock. In the end, however, no bids were received during the Chapter 11 case for the stock of Xechem Nigeria.

5.     Two potential rival plans of reorganization were filed thereafter and other possibilities to reorganize the estates were explored.

6.     Dr. Robert Swift and his affiliate, Cosmid Corp., claimed rights in a botanical sickle cell anemia treatment drug called COS-103. An adversary suit brought derivatively on behalf of the bankruptcy estates by the Committee against Dr. Swift and Cosmid Corp. was filed. On the eve of trial in late 2010, a term sheet for a settlement was reached and definitive documentation to implement that settlement was prepared and circulated by SNR Denton but Dr. Swift never agreed to the definitive documentation to implement that settlement.

7.     The cases were ultimately converted to Chapter 7 on March 7, 2011.

## JURISDICTION

8.     This Court has jurisdiction over these cases pursuant to 28 U.S.C. § 1334. This is a core proceeding under 28 U.S.C. § 157(b)(2)(A) and (O).

9.     Venue of the Debtors' Chapter 11 cases is proper in this district pursuant to 28 U.S.C. § 1408.

## RETENTION OF SNR DENTON US LLP

10.    SNR Denton was retained as counsel for the Committee effective December 18, 2008 and that retention was approved effective as of that date in both estates. (Xechem, Inc. Case. Dkt. No. 81, 1/13/09; Xechem Int'l Case Dkt. No. 62, 2/3/09). Copies of those retention orders are attached as Exhibit A hereto.

## SUMMARY OF PROFESSIONAL SERVICES RENDERED

11. A summary of SNR Denton's time by matter is attached as <u>Exhibit B</u> hereto, a summary of SNR Denton's expenses by type of expense are attached as <u>Exhibit C</u> hereto and a summary of SNR Denton's time by timekeeper is attached as <u>Exhibit D</u> hereto. The invoices with the detailed time and expenses organized by matter are attached as <u>Exhibit E</u> hereto.

12. Among the key tasks performed by SNR Denton in the cases include:

   (a) <u>5 HMF Sale.</u> Reviewing the proposed sale of 5 HMF on an expedited basis and negotiating certain protections against insiders benefiting from that sale.

   (b) <u>Xechem Nigeria</u>. Evaluating proposed sale of stock of Xechem Nigeria and related marketing process. Negotiation of the bid procedure order. Investigation when no bids were received.

   (c) <u>Claims Objections</u>. Preparing and filing objections to claims filed by four former insiders asserting claims of over $3 million in the aggregate. Mr. Burg's claim was ultimately disallowed. A greatly reduced claim amount had been negotiated for Col. Pandey's claim but was never finalized due to the conversion of these cases to Chapter 7.

   (d) <u>Chapter 11 Plans</u>. Evaluating and pursuing potential Chapter 11 plans and related financing. A plan was filed by the Committee dependent on the outcome of the Swift litigation and a rival plan was filed by Lemonte Forthun on behalf of himself and a shareholder group. A possible joint plan with Mr. Forthun was also explored. There was a related motion to retain Basu Capital as capital finder for the Committee's plan which was objected to by Dr. Ramesh Pandey and Mr. Forthun, which objections were ultimately overruled after certain modifications were made to the retention.

   (e) <u>Nicosan License Termination</u>. The Committee evaluated the purported termination of the license for the sickle cell drug Nicosan by the Nigerian government agency NIPRID and related adversary proceeding filed against NIPRID. There were also direct negotiations with NIPRID's counsel on possible reinstatement of the license via a settlement. There were also discussions with Mr. Forthun and/or Dr. Pandey about their claimed abilities to obtain a new or reinstated license from NIPRID.

   (f) <u>Other Potential Assets and Causes of Action</u>. Other potential assets and causes of action were diligenced and evaluated, including Xechem India and potential claims against directors and officers. This included exploring potential contingency fee and foreign counsels to pursue certain matters.

- 4 -

(g) <u>2004 Examinations</u>. SNR Denton sought for the Committee Rule 2004 discovery from Dr. Ramesh Pandey, Col. Bhuwan Pandey, the Debtors and Lemonte Forthun and reviewed and evaluated the extensive document discovery received from them.

(h) <u>Adversary Proceeding against Dr. Swift and Cosmid Corp.</u>: The Committee asserted a derivative demand for the Debtors to pursue Dr. Swift and Cosmid Corp. for usurpation of corporate opportunity, breach of fiduciary duty and other claims related to a botanical sickle cell drug, COS-103, which Dr. Swift and his affiliate Cosmid Corp were involved with. Derivative standing for the Committee to pursue that claim was granted and an adversary proceeding was filed. The adversary proceeding also incorporated an objection to Dr. Swift's purported secured claim. There was discovery and 3 depositions (two of which were out of state) in connection therewith. There was great difficulty getting Dr. Swift to agree to a statement of agreed facts, which took several status hearings to obtain. Two expert reports, witness and exhibit lists and a pretrial memorandum of law and proposed findings of fact and conclusions of law were prepared and submitted by the Committee for the trial. A motion to postpone the trial by Dr. Swift was filed and denied.

On the eve of trial in late 2010, a term sheet for what appeared to be a productive settlement for development of the drug and a split of future revenues therefrom was negotiated and signed and the trial dates were cancelled while definitive documentation to implement the settlement was circulated, which Committee counsel promptly prepared. Dr. Swift, however, would never agree to the definitive documentation and therefore it was never implemented.

(i) <u>Hearings</u>. There were numerous status and other hearings in the cases.

(j) <u>Committee Meetings</u>. There were numerous Committee calls and/or emails on developments and strategy and related analysis.

## REQUEST FOR RELIEF

13. SNR Denton respectfully requests that the Court approve on a final basis the allowance and award of compensation for professional services rendered and reimbursement of actual and necessary expenses incurred by SNR Denton as counsel to the Committee during the cases as a Chapter 11 administrative expense.

14. No interim payments have been made to nor any interim fee applications filed by SNR Denton. SNR Denton did not receive a retainer.

## BASIS FOR REQUESTED RELIEF

15. Section 330 of the Bankruptcy Code authorizes the Court, after notice and a hearing, to award to a trustee, an examiner, or other professional employed under Section 327:

(a) reasonable compensation for actual, necessary services rendered by the trustee, examiner, professional person, or attorney and by any paraprofessional person employed by any such person; and

(b) reimbursement for actual, necessary expenses.

11 U.S.C. § 330. Section 503(b) provides that any compensation and reimbursement awarded under Section 330(a) may be paid as an administrative expense of the estate. 11 U.S.C. § 503(b).

16. In determining the amount of reasonable compensation to be awarded under Section 330(a), the bankruptcy court must consider the nature, the extent and the value of such services, taking into account all relevant factors, including:

(a) the time spent on such services;

(b) the rates charged for such services;

(c) whether the services were necessary to the administration of, or beneficial at the time at which the service was rendered toward the completion of, a case under this title;

(d) whether the services were performed within a reasonable amount of time commensurate with the complexity, importance, and nature of the problem, issue, or task addressed;

(e) with respect to a professional person, whether the person is board certified or otherwise has demonstrated skill and experience in the bankruptcy field; and

(f) whether the compensation is reasonable based on the customary compensation charged by comparably skilled practitioners in cases other than cases under this title.

11 U.S.C. § 330(a)(3).

17. In conjunction with the factors enumerated in Section 330(a)(3), some courts also look at the so-called "Johnson Factors" which grew out of *Johnson v. Georgia Highway Exp., Inc.*, 488 F.2d 714, 717-19 (5th Cir. 1974), *abrogated on other grounds by Blanchard v.*

*Bergeron*, 489 U.S. 87 (1989), a civil rights case. The *Johnson* Factors were deemed applicable to bankruptcy cases in the case of *In re First Colonial Corp. of America*, 544 F.2d 1291, 1299 (5th Cir. 1977), *cert. denied*, 431 U.S. 904 (1977). In that case, the court identified the following twelve factors to be considered in awarding reasonable compensation:

    (a)    the time and labor required;

    (b)    the novelty and difficulty of the questions;

    (c)    the skill requisite to perform the legal service properly;

    (d)    the preclusion of other employment by the attorney due to acceptance of the case;

    (e)    the customary fee;

    (f)    whether the fee is fixed or contingent;

    (g)    time limitations imposed by the client or the circumstances;

    (h)    the amount involved and the results obtained;

    (i)    the experience, reputation, and ability of the attorneys;

    (j)    the "undesirability" of the case;

    (k)    the nature and length of the professional relationship with the client; and

    (l)    awards in similar cases.

In general, the *Johnson* Factors are similar to those listed in Section 330(a)(3). *See In re Phillips*, 291 B.R. 72, n. 31 (Bankr. S.D. Tex. 2003).

    18.    Other courts have endorsed a "lodestar" analysis, as established in *Lindy Bros. Builders, Inc. v. Am. Radiator & Sanitary Corp.*, 487 F.2d 161, 168 (3d Cir. 1973), *appeal following remand*, 540 F.2d 102, 117 (3d. Cir. 1976). The "lodestar" is obtained by multiplying the reasonable number of hours times a "reasonable" hourly rate. In order to determine a "reasonable" hourly rate, courts generally look at the professional's normal billing rates outside of bankruptcy. *Id.* Generally, so long as the rates being charged are the professional's normal rates charged in bankruptcy or non-bankruptcy matters alike, they will be afforded a presumption

of reasonableness. *In re Jefsaba, Inc.*, 172 B.R. 787, 798 (Bankr. E.D. Pa. 1994). Along with a reasonable rate, the professional must also demonstrate the reasonableness of the time spent by the professional on the various tasks. *Id.*

19. Finally, some courts use a combination of the *Johnson* Factors and the lodestar analysis. Consequently, the lodestar may be adjusted either upward or downward according to the *Johnson* Factors. *See Miner v. Stehlik & Assocs. (In re Broady)*, 92 B.R. 389 (Bankr. W.D. Mo. 1988).

20. The Seventh Circuit has not definitively adopted either the *Johnson* Factors or the "lodestar" analysis, although it has inherently sanctioned the use of both approaches. *See In re UNR Indus.*, 986 F.2d 207, 210 (7th Cir. 1993) (approving bankruptcy court's application of lodestar analysis); *In re Geraci*, 138 F.3d 314, 317-18 (7th Cir. 1998) (approving bankruptcy court's application of the *Johnson* Factors).

21. The Fees and Expenses requested by SNR Denton are appropriate under all three standards. In particular, SNR Denton's request is fair and reasonable given (i) the time required to address the complex issues arising in these cases over the two plus years they were in Chapter 11, (ii) the rates charged by SNR Denton are standard in the industry and in Chicago, (iii) the lead role the Committee took on many matters, including the Rule 2004 investigations, the derivative demand and adversary proceeding, (iv) the demanding (over 700 hours) and at times intense nature of these cases, (v) the skill and experience of the attorneys working on this matter in connection with bankruptcy work in general, and Committee representations in particular, and (vi) the compensation requested herein is at the agreed reduced rate and is less than the customary hourly rates normally charged by SNR Denton in material bankruptcy cases and, in some cases, by other professionals at other firms of comparable size, stature and experience.

22. As a practical matter, it appears there will be less than $10,000 on hand after payment of pending Chapter 7 administrative expenses. Heller Draper as main Debtors' counsel already has an allowed Chapter 11 administrative expense order and Locke Lord as Debtor's local counsel has a pending fee application set to be heard on November 18, 2011. Therefore, the practical amount to be paid to Chapter 11 administrative expenses on a *pro rata* basis will be small.

## NOTICE

23. Where the compensation sought by an applicant exceeds $1,000, Fed. R. Bankr. P. 2002(a)(6) requires at least 21 days' notice to creditors and parties in interest of the hearing set to consider the application as modified by FRBP 2002(h). SNR Denton has provided adequate notice and has set the hearing on this Application in accordance with the applicable rules.

## **CONCLUSION**

**WHEREFORE**, SNR Denton respectfully requests (i) allowance on a final basis as a Chapter 11 administrative expense of the estate allowance and payment from the Debtors' estates for fees in the amount of $362,925.00 for over 700 hours of work and expenses of $8,270.10, (ii) payment of such allowed fees and expenses on a pro rata basis along with other allowed Chapter 11 administrative expenses and after payment of allowed Chapter 7 administrative expenses, and (iii) such other and further relief as this Court believes necessary and proper.

Dated:  October 28, 2011

>Respectfully submitted,
>
>SNR DENTON US LLP
>
>By:    /s/ Robert E. Richards
>Robert E. Richards (ARDC No. 6199138)
>233 South Wacker Drive
>Suite 7800
>Chicago, IL 60606
>robert.richards@snrdenton.com
>Telephone:  (312) 876-8000
>Facsimile:  (312) 876-7934
>
>*Former Counsel to the Chapter 11 Official Committee of Unsecured Creditors*

- 10 -

12966300\V-2